**Connell Foley LLP**
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, New Jersey 07102
(973) 436-5800
Attorneys for Plaintiff, Wingate Inns International, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WINGATE INNS INTERNATIONAL, INC., a Delaware Corporation, | : |
| | : |
| Plaintiff, | :    Civil Action No. 21- |
| | : |
| v. | : |
| | :    **COMPLAINT** |
| MILAN HOSPITALITY, LLC, a Missouri Limited Liability Company; and MIHIR PATEL, an individual, | : |
| | : |
| Defendants. | : |
| | : |

Plaintiff Wingate Inns International, Inc., by its attorneys, Connell Foley LLP, complaining of defendants, Milan Hospitality, LLC and Mihir Patel, says:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Wingate Inns International, Inc., ("WII") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2.     Defendant Milan Hospitality, LLC ("Milan"), on information and belief, is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business at 18700 East 37th Terrace South, Independence, Missouri 64057.

WII 53629
5870315-1

3.      Lotus Holdings, LLC, on information and belief, is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business at 1150 Grand Boulevard, Suite 110, Kansas City, Missouri 64106.

4.      Defendant Mihir Patel ("Patel"), on information and belief, is a member of Lotus Holdings, LLC and a citizen of the State of Missouri, having an address at 1150 Grand Boulevard, Suite 110, Kansas City, Missouri 64106.

5.      Upon information and belief, Lotus Holdings, LLC is the only constituent member of Milan.

6.      Upon information and belief, Patel is the only constituent member of Lotus Holdings, LLC.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the plaintiff and both defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

8.      This Court has personal jurisdiction over Milan by virtue of, among other things, section 17.6.3 of the October 11, 2018 franchise agreement by and between Milan and WII (the "Franchise Agreement"), described in more detail below, pursuant to which Milan has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

9.      This Court has personal jurisdiction over Patel by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below, pursuant to which Patel acknowledged that he was personally bound by section 17 of the Franchise Agreement.

2

5870315-1

10. Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, inasmuch as that provision contains an express waiver by Milan of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Agreements Between The Parties

11. On or about October 11, 2018, WII entered into the Franchise Agreement with Milan for the operation of a 63-room Wingate® guest lodging facility located at 18700 East 37 Terrace, Independence, Missouri 64057, designated as Site No. 53629-13926-02 (the "Facility"). A true copy of the Franchise Agreement is attached hereto as Exhibit A.

12. On or about October 11, 2018, WII and Milan entered into a SynXis Subscription Agreement (the "SynXis Agreement") which governed Milan's access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to same. A true copy of the SynXis Agreement is attached hereto as Exhibit B.

13. Pursuant to section 5 of the Franchise Agreement, Milan was obligated to operate a Wingate® guest lodging facility for a twenty-year term.

14. Pursuant to section 7 and Schedule C of the Franchise Agreement, and section 5 of the SynXis Agreement, Milan was required to make certain periodic payments to WII for royalties, system assessment fees, taxes, SynXis fees, interest, and other fees (collectively, "Recurring Fees").

15. Pursuant to section 7.3 of the Franchise Agreement, Milan agreed that interest is payable "on any past due amount payable to [WII] under this [Franchise] Agreement at the rate

3

of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

16. Pursuant to section 3.6 of the Franchise Agreement, Milan was required to prepare and submit monthly reports to WII disclosing, among other things, the amount of gross room revenue earned by Milan at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to WII.

17. Pursuant to section 3.6 of the Franchise Agreement, Milan agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.6 and 4.8 of the Franchise Agreement, Milan agreed to allow WII to examine, audit, and make copies of the entries in these books, records, and accounts.

18. Pursuant to section 11.2 of the Franchise Agreement, WII could terminate the Franchise Agreement, with notice to Milan, if Milan (a) discontinued operating the Facility as a Wingate® guest lodging establishment, and/or (b) lost possession or the right to possession of the Facility.

19. Pursuant to section 12.1 of the Franchise Agreement, Milan agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to WII in accordance with a formula specified in the Franchise Agreement.

20. Pursuant to section 17.4 of the Franchise Agreement, Milan agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

21.     Effective as of the date of the Franchise Agreement, Patel provided WII with a Guaranty of Milan's obligations under the Franchise Agreement.  A true copy of the Guaranty is attached hereto as Exhibit C.

22.     Pursuant to the terms of the Guaranty, Patel agreed, among other things, that upon a default under the Franchise Agreement, he would "immediately make each payment and perform or cause [Milan] to perform, each unpaid or unperformed obligation of [Milan] under the [Franchise] Agreement."

23.     Pursuant to the terms of the Guaranty, Patel agreed to pay the costs, including reasonable attorneys' fees, incurred by WII in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

24.     In connection with entering into the Franchise Agreement, Milan and Patel assumed a Development Incentive Note in the amount of $235,431.00 (the "Note").  A true copy of the Note is attached hereto as Exhibit D.

25.     Pursuant to the terms of the Note, on each anniversary of the Facility's opening date, one-fifteenth (1/15th) of the original principal amount of the Note would be forgiven without payment.

26.     The Note provides, in pertinent part, that if (i) a termination of the Franchise Agreement occurs for any reason, (ii) a transfer occurs and the transferee does not assume the Note, (iii) Milan loses ownership or possession of the Facility, or (iv) a receiver is appointed with respect to Milan and Patel and the Facility and the action is not dismissed within ninety (90) days, then "the outstanding, unamortized principal balance of this Note shall be immediately due and payable without further notice, demand or presentment."

5870315-1

27.    Pursuant to the terms of the Note, if the Note is not paid within ten (10) days after it is due, the outstanding principal balance shall bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by applicable law.

28.    The Note also provides that "[i]f this Note is collected by or through an attorney at law, [WII] shall be entitled to collect reasonable attorneys' fees and all costs of collection."

### The Termination of the Franchise Agreement

29.    On or about July 23, 2020, Milan ceased operating the Facility as a Wingate® guest lodging facility, thereby unilaterally terminating the Franchise Agreement.

30.    By letter dated August 10, 2020, a true copy of which is attached as Exhibit E, WII acknowledged Milan's unilateral termination of the Franchise Agreement, effective July 23, 2020, and advised Milan that it was required to pay to WII as liquidated damages for premature termination the sum of $126,000.00 as required under the Franchise Agreement, all outstanding Recurring Fees through the date of termination, and the outstanding balance of the Note.

### FIRST COUNT

31.    WII repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 30 of the Complaint.

32.    Pursuant to sections 3.6 and 4.8 of the Franchise Agreement, Milan agreed to allow WII to examine, audit, and make copies of Milan's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

33.    The calculation of the monetary amounts sought by WII in this action is based on the gross room revenue information supplied to WII by Milan and, to the extent there has been non-reporting, WII's estimate as to the gross room revenue earned by Milan.

5870315-1

34. The accuracy of this estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Milan.

**WHEREFORE**, WII demands judgment ordering that Milan account to WII for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility from the inception through the date of termination of the Franchise Agreement.

## SECOND COUNT

35. WII repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 34 of the Complaint.

36. On or about July 23, 2020, Milan unilaterally terminated the Franchise Agreement by ceasing to operate the Facility as a Wingate® guest lodging facility.

37. Section 12.1 of the Franchise Agreement provides that, in the event of termination of the Franchise Agreement due to action of the Franchisee, Milan shall pay liquidated damages to WII within 30 days of termination.

38. As a result of the termination of the Franchise Agreement, Milan is obligated to pay WII liquidated damages in the amount of $126,000.00, as calculated pursuant to section 12.1 of the Franchise Agreement.

39. Notwithstanding WII's demand for payment, Milan has failed to pay WII the liquidated damages as required in section 12.1 of the Franchise Agreement.

40. WII has been damaged by Milan's failure to pay liquidated damages.

**WHEREFORE**, WII demands judgment against Milan for liquidated damages in the amount of $126,000.00, together with interest, attorneys' fees, and costs of suit.

5870315-1

## THIRD COUNT

41.    WII repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 40 of the Complaint.

42.    By virtue of the premature termination of the Franchise Agreement, WII sustained a loss of future revenue over the remainder of the twenty-year term of the Franchise Agreement.

43.    If the Court determines that Milan is not liable to pay WII liquidated damages as required by section 12.1 of the Franchise Agreement then, in the alternative, Milan is liable to WII for actual damages for the premature termination of the Franchise Agreement.

44.    WII has been damaged by Milan's breach of its obligation to operate a Wingate® guest lodging facility for the remaining term of the Franchise Agreement.

**WHEREFORE**, WII demands judgment against Milan for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

45.    WII repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 44 of the Complaint.

46.    Pursuant to section 7 and Schedule C of the Franchise Agreement, and section 5 of the SynXis Agreement, Milan was obligated to remit Recurring Fees to WII.

47.    Despite its obligation to do so, Milan failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $16,879.62.

48.    Milan's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged WII.

5870315-1

**WHEREFORE**, WII demands judgment against Milan for the Recurring Fee due and owing under the Franchise Agreement, in the current amount of $16,879.62, together with interest, attorneys' fees, and costs of suit.

## FIFTH COUNT

49.    WII repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 48 of the Complaint.

50.    At the time of the termination of the Franchise Agreement, Milan was obligated to pay WII Recurring Fees.

51.    Despite its obligation to do so, Milan failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $16,879.62.

52.    Milan's failure to compensate WII constitutes unjust enrichment and has damaged WII.

**WHEREFORE**, WII demands judgment against Milan for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $16,879.62, together with interest, attorneys' fees, and costs of suit.

## SIXTH COUNT

53.    WII repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 52 of the Complaint.

54.    Pursuant to the terms of the Guaranty, Patel agreed, among other things, that upon a default under the Franchise Agreement, he would immediately make each payment and perform each obligation required of Milan under the Franchise Agreement.

55.    Despite his obligation to do so, Patel has failed to make any payments or perform or cause Milan to perform each obligation required under the Franchise Agreement.

9

56.    Pursuant to the Guaranty, Patel is liable to WII for Milan's liquidated damages in the amount of $126,000.00, or actual damages in an amount to be determined at trial, and Milan's Recurring Fees due and owing under the Franchise Agreement, in the current amount of $16,879.62.

**WHEREFORE**, WII demands judgment against Patel for damages in the amount of all liquidated damages, or actual damages, and Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit

## SEVENTH COUNT

57.    WII repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 56 of the Complaint.

58.    Pursuant to the terms of the Note, Milan and Patel are obligated to pay WII the principal sum of $204,040.20.

59.    Despite their obligation to do so, Milan and Patel have failed to make the payment due and owing to WII under the Note.

60.    Milan and Patel's failure to make the agreed payment on the Note constitutes a breach of the Note and has damaged WII.

61.    Milan and Patel's failure to make the agreed payment on the Note constitutes unjust enrichment and has damaged WII.

**WHEREFORE**, WII demands judgment against Milan and Patel for damages in the amount of the principal sum of $204,040.20 due and owing under the Note, together with interest, attorneys' fees, and costs of suit.

10

Connell Foley LLP
Attorneys for Plaintiff,
Wingate Inns International, Inc.

By:_____
**Bryan P. Couch**

Dated:  April 6, 2021

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action

pending in any court or of any pending arbitration or administrative proceeding.

Connell Foley LLP
Attorneys for Plaintiff,
Wingate Inns International, Inc.

By:_____
**Bryan P. Couch**

Dated:  April 6, 2021

11

5870315-1